### P. J. Burton v. The State.

No. 3951.     Decided March 20, 1907.

**1.—Bigamy—Former Wife or Husband—Statutes Construed.**

Under article 344, Penal Code, the language, "former wife or husband living," is used in contradistinction to the person then being taken to wife or husband; and the contention that said word "former" did not refer to the then wife at the time of the marriage but to some other wife is hypercritical.

**2.—Same—Husband and Wife—Witness.**

Where upon trial for bigamy the former wife of defendant was called to the witness stand but was not sworn and did not testify, there was no error.

**3.—Same—Marriage License—Recorded Instrument—Notice of Filing.**

Upon trial for bigamy it was error to permit the introduction in evidence of the marriage license between the defendant and his former wife, the same not having been filed with the papers of the cause three days before the trial and notice thereof given to defendant; and this whether the license was the original or a copy.

**4.—Same—Common Law Marriage.**

Where upon trial for bigamy, the marriage license between defendant and his former wife was illegally admitted in evidence, and it was not clear that if the court had excluded the same that the evidence of a common law marriage could have been established, there was reversible error.

**5.—Same—Insanity—Non-Expert Opinion—Predicate.**

Where upon trial for bigamy the evidence showed that the witnesses had a bare acquaintance with defendant, and did not state any facts which would authorize them to form conclusions, it was error to permit them to give opinions as to the sanity of the defendant; and this although defendant's plea of insanity was weak.

**6.—Same—Charge of Court—Duress.**

Where upon trial for bigamy there was evidence that a mob visited the defendant on the night preceding his second marriage and demanded that he should marry his alleged second wife, and there was also testimony that he did not marry until the next morning when he was not under immediate personal constraint, the court did not err in not charging on duress.

**7.—Same—Accomplice—Mob Violence.**

Where upon trial for bigamy there was evidence that defendant was threatened with violence by a mob if he did not marry his second wife, and there was no testimony showing that the members of said mob knew of his former marriage, they could not be held to be accomplices.

Appeal from the District Court of Erath.     Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of bigamy; penalty, two years and three months imprisonment in the penitentiary.

The opinion states the case.

*Martin & George, Parker & Parker, F. B. Stanley,* for appellant.—
On question of construction of statute: Holley v. State, 14 Texas

Crim. App., 512; Murray v. State, 21 Texas Crim. App., 620; Smith v. State, 18 Texas Crim. App., 455. On question of wife as witness: Brock v. State, 44 Texas Crim. App., 335; Boyd v. State, 33 Texas Crim. Rep., 472; Moore v. State, 45 Texas Crim. Rep., 234. On question of opinion of non-expert witness: Wells v. State, 17 Texas Ct. Rep., 443; Williams v. State, 37 Texas Crim. Rep., 348. On the question of duress: Rice v. Rice, 31 Texas, 178; Walker v. McNeils, Dallam, 541.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of non-expert opinion: Burton v. State, 33 Texas Crim. Rep., 138; Adams v. State, 34 Texas Crim. Rep., 470. On question of duress: Medrano v. State, 32 Texas Crim. Rep., 214.

HENDERSON, JUDGE.—Appellant was convicted of bigamy; and appeals. The facts briefly stated tend to show on the part of the State that appellant, who lived at or near Fort Worth, was at the time buying cotton at Dublin in Erath County, and while there married a young lady living at that point; it being further shown that he then had a wife living at his home near Fort Worth, whom he had married in the year 1896. The defense depended on the weakness of the State's case, and also set up insanity. The proof on this subject showed that appellant was subject to fits of some character, which began while he was yet a youth. These were periodic and generally occurred on account of some undue excitement. At such times he was rendered unconscious, and while in such condition was irresponsible. The proof on the part of appellant, in this connection, tended to show that while he was engaged in buying cotton at Dublin, he began paying some attention to a young lady by the name of Maggie Neel. These attentions, it appears, excited the suspicion of certain good people of Dublin, and they finally became so excited that about the second of April, a mob of some seventy-five or one hundred proceeded to the house where the young lady lived, about 10 o'clock at night, and called appellant, who was at the time visiting there, out to the front gate and demanded to know his intentions with reference to the young lady, and insisted that he marry her, which he agreed to do, and they then became satisfied and retired. That night appellant procured a private conveyance and proceeded with the young lady to Stephenville, where he married her. It is claimed the visitation of this mob of eager and zealous citizens so excited him as that it produced one of his spells that rendered him irresponsible for what he did in marrying the young lady. This is a sufficient statement of the case in order to discuss the assignments.

Appellant insists that bigamy, as defined by our statute (see art. 344 of the Penal Code) does not constitute an offense. In this record he lays stress on the language *"former* wife or husband living," etc. Said article is as follows: "If any person who has a *former* wife or

husband living shall marry another in this State such person shall be punished by imprisonment in the State penitentiary," etc. The contention is that the word "former" does not refer to the then wife at the time of the marriage, but to some other wife. It occurs to us this is hypercritical. The statute properly construed uses the term former wife in contradistinction to the person then being taken to wife; that is, if the man marry a woman, and such man has a wife then living, who is a former wife to the one then being taken to wife. We think this construction is in accordance with the rules of construction of criminal statutes as prescribed in our code and by the authorities.

There was no error in the State calling a former wife to the witness stand. She was not questioned, nor was any proof adduced from her. It was not even proved by her that she was appellant's wife. She was not sworn and did not testify to anything. So the case does not come under the proposition announced in Moore v. State, 45 Texas Crim. Rep., 234.

During the trial the State introduced before the jury a marriage license issued by J. P. King, County Clerk of Tarrant County, authorizing the marriage of P. J. Burton and Miss Juanita Hoelzle of date May 2, 1896, with the return thereon as follows: "State of Texas, Tarrant County: This certifies that I joined in marriage, as husband and wife, P. J. Burton and Juanita Hoelzle on the 2nd day of May, 1896. J. Morgan Wells, Pastor 1st Baptist Church." This was objected to by appellant on the ground that it was not shown to come from the proper custody; that there was no proof that J. Morgan Wells was a minister authorized to celebrate the marriage ceremony, and no proof that he executed same; that said purported marriage license is hearsay evidence, and that same is inadmissible because same had not been filed with the papers of the cause three days before the trial and notice thereof given to appellant. The court explains this by stating that the defendant was shown to have been the man to whom the license was issued, and further that on the next day after the issuance of said license appellant brought his wife to his mother's and told her he had been married by J. Morgan Wells, and that his wife's maiden name was Juanita Hoelzle. There is only one point in the objection urged, which we will notice, and which in our opinion renders same inadmissible, to wit: That said marriage license was not filed with the papers of the cause three days before the trial and defendant given notice thereof. Whether this was the original copy of the marriage license, it occurs to us, would make no difference under the statute. This testimony, if admissible at all, as presented, was admissible under the terms of our statute, as it did not prove itself outside of the terms of the statute, nor was its execution proven in connection with its being offered. A marriage license is an instrument authorized to be recorded by the county clerk. See Texas Civil Statutes, arts. 2958 and 2312. The last named article authorizes the introduction, in evidence, of the originals or copies of recorded in-

struments where otherwise pertinent under conditions therein named. We quote therefrom as follows: "Every instrument of writing which is permitted or required by law to be recorded in the office of the county clerk of the county court, and which has been or may be so recorded after being proven or acknowledged in the manner provided by the laws in force at the time of its registration, shall be admitted as evidence without the necessity of proving its execution; provided, that the party who wishes to give it in evidence shall file the same among the papers of the suit in which he proposes to use it, at least three days before the commencement of the trial of such suit, and give notice of such filing to the opposite party or his attorney of record; and unless such opposite party, or some other person for him, shall within three days before the trial of the cause, file an affidavit stating that he believes such instrument or writing to be forged," etc. Of course, it follows that the marriage license with the return certificate thereon, being an instrument authorized and required to be recorded in the county clerk's office, and an instrument which does not prove its own execution—when it is proposed to be used in evidence, the terms of the statute must be complied with, the rule being the same in criminal as in civil cases. See Golin v. State, 37 Texas Crim. Rep., 90; Allison v. State, 14 Texas Crim. App., 402; Graves v. State, 28 Texas Crim. App., 354; Williams v. State, 30 Texas Crim. App., 153; Johnson v. State, 9 Texas Crim. App., 249, and Lamar v. State, 16 Texas Ct. Rep., 394. It will be seen from these cases that this doctrine has been extended to every character of instrument, which is required to be placed on record in the county clerk's office, which has come before this court, the last named case applying the doctrine to the charter of a municipal corporation, which is required to be placed on record. In reply to this proposition, the State insists that inasmuch as the marriage of appellant to his first wife was abundantly proven by parole evidence, this error was cured. In response to this, we would say that we do not recall from the record any witness who was present and witnessed the celebration or performance of the ceremony. The State offered some witnesses originally who proved that the parties, appellant and his first wife, lived together some ten years within their knowledge as man and wife, and they were reputed to be man and wife; that he called her his wife and she called him her husband. This might constitute a common law marriage. In addition to this, when appellant offered his testimony, he introduced, among others, his brothers and mother. While none of these witnessed the ceremony, they testified as to the marital relations of the parties, and that appellant brought his first wife home and told them that she was his wife, etc. Howver, we are not prepared to say if the court had excluded the marriage certificate that appellant would have placed these witnesses on the stand so that they could be cross-examined. Appellant, as a part of his case, relied upon this marriage certificate. The case went to trial upon this basis, and not as upon a common law

marriage, and we do not believe, conceding the comman law marriage to have been established, that the introduction of the marriage certificate was an immaterial error.

Appellant objected to the testimony of certain witnesses introduced by the State, who were non-experts, on the ground that they were permitted to give their opinions as to the sanity of appellant without stating any facts upon which to base such opinions. The witness Foust was introduced on this subject by the State. This witness appears to have been one of the parties who visited appellant at Dublin on the night preceding his marriage with Miss Neel. He was asked this question: "Q. Now, Mr. Foust, you testified that you saw the defendant down there at Dublin that night and talked with him; during the conversation and from what you saw of him what do you say as to whether at that time he knew right from wrong? A. I took him to be a sane man. Q. Did he know right from wrong? A. Yes, sir; he seemed to know right from wrong, acted like he did."

Judge M. J. Thompson, who officiated in marrying appellant and Miss Neel at Stephenville, was asked: "Q. You testified that you married the defendant and Miss Maggie Neel and that you saw him there; now state to the jury whether in your opinion at that time he was sane, and whether at that time he knew right from wrong. A. I think he was sane. He knew right from wrong; I didn't see anything unusual in his manner except that he wanted to have the marriage private."

Jim Edwards, another witness, was asked the following question: "Q. Now, you have testified in this case heretofore about seeing the defendant the night before he was married and carrying him up to Jno. Frey's; now state to the jury whether in your opinion he was sane and knew right from wrong at that time. A. He seemed to; I think he did; he seemed all right; he was as much at himself as anybody. Yes, sir; he was sane." The testimony of all these witnesses was objected to by appellant because they were not shown to have any acquaintance with appellant, and they related no facts upon which they were authorized to predicate an opinion and to give the jury such an opinion of his sanity as a non-expert might or could give; that no facts were detailed or circumstances which would authorize them to form conclusions or give opinions as to the sanity of the defendant. We think these objections were well taken. This question has come before the court so often that we need only to refer to the authorities on the subject. See Williams v. State, 37 Texas Crim. Rep., 348; Betts v. State, 13 Texas Ct. Rep., 885; McLeod v. State, 31 Texas Crim. Rep., 331, and Ellis v. State, 33 Texas Crim. Rep., 86. Here it seems the parties had a bare acquaintance with appellant. They saw him only on the one occasion, and then for a short space of time. To authorize a non-expert to give his opinion on such a state of facts would be a travesty on the law. If such a condition of affairs authorized a non-expert to give testimony, all that would be

necessary, would be for the State, or the defendant, as the case might be, pending a trial, to introduce a number of witnesses to a defendant, who would merely say good morning or pass the compliments of the day with him, and they could then be introduced, and after reciting such fact be authorized to give an opinion as to the sanity of the party. The law does not contemplate the proposition that on such a predicate a witness who is not an expert can give his opinion as to the sanity or insanity of a person. Of course, if this character of testimony was absolutely immaterial, and it could be said that it had no possible effect on the jury, it might not constitute a reversible error. It is intimated here that appellant's plea of insanity is weak, and that it lacks the support of such testimony as should challenge the attention of the jury. As we understand the proposition, in such state of case, the introduction of illegitimate testimony becomes the more dangerous in that it is liable to turn the scale. At any rate, under the authorities, we do not believe this testimony was admissible, and that it was of an immaterial character, no matter how weak the evidence on the part of appellant which may have supported his plea of insanity.

Appellant insists that the court should have charged on duress; that is, that appellant was constrained by the mob which visited him on the night preceding his marriage to commit the offense, and so ought not to be held responsible therefor. It will be remembered that the mob, in their zeal to protect the prosecutrix and to conserve the morals of the community, visited the house where she and appellant were on the night preceding the marriage of the parties. They do not appear to have been turbulent, but as is usually the case, were peacefully inclined but exacting. They demanded that appellant should marry the prosecutrix at once; one of the leaders went so far as to observe what he would do with appellant under similar circumstances. Under these conditions, it could hardly be expected that he would avow he was laboring under conditions that would not authorize him to take the young lady to wife, and he appears to have been constrained to comply with their commands; that is, he promised to do so at once, but this was not consummated at the time, and he was permitted to depart under such promise for Stephenville that night in company with the young lady. He applied to the county clerk. that night for license, but was informed that he would not issue same until the next morning. On a renewal of his application the next morning the license was issued and they were married at Stephenville. He does not then appear to have been under the constraint of the mob, and the law appears to require, before this defense can be urged, that he must be under immediate personal constraint at the time he does an act before he will be exonerated. See Penal Code, art. 44, and Paris v. State, 35 Texas Crim. Rep., 82. Consequently, it not appearing that appellant was at the time under a personal constraint, it is not necessary that the court should have given a charge on this subject.

Appellant also claims that the court should have given a charge on

accomplice testimony with reference to members of the party who visited him on the night before his marriage with Miss Neel. In view of the fact that there is no testimony showing that the members· of the party who waited on him knew of his former marriage, they could not be held to be accomplices, consequently a charge on this subject was not required. .

We do not deem it necessary to discuss other questions raised, but for the errors pointed out, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*