## J. B. McLeod v. The State.

*No. 26. Decided December 7.*

1. **Insanity—Testimony of Nonexpert Witnesses—Opinion as to.** Upon an issue of insanity, nonprofessional witnesses should be allowed to give their opinions, together with the facts upon which they are based, where it appears that their acquaintance with the party will enable them to form correct opinions of his mental condition. But to qualify such witness to give his opinion, he must have had the necessary opportunity of observation so as to be able to form a reasonable opinion of the existence or nonexistence of the disease.

2. **Same.**—Where on the issue of insanity the prosecution proved, over defendant's objection, by a witness, that he as judge of the court had presided at the former trial of the case, and had noticed the defendant both upon that trial and upon the present one, when he would be brought in and taken out of the court room by the sheriff; that he had never seen defendant at any other time; that he had never talked with him, nor heard him speak a word. That he had noticed his eyes on these various occasions, as he sat in the court room: that he had been a good deal with insane persons, and noted their eyes particularly, and that defendant's eyes did not look like those of the insane persons he had seen; that from his observations of defendant, as above stated, he had formed an opinion as to his sanity. and that in his opinion defendant was sane when he killed Varner. *Held,* that the evidence was both incompetent and inadmissible.

3. **Same — Expert Testimony.**—Expert testimony in insanity cases has, in general, proved so unsatisfactory that only those who are expert in mental diseases or psychological studies are regarded as authority. It is a knowledge rarely attained, and involving much study, observation, and experience.

4. **Evidence and Tests of Insanity.**—The evidence by which insanity is tested. as stated by learned authors, is the *entire* exterior of the subject, his language and conduct, his posture, motions, gestures, eyes, nose, mouth, words, and intonations; and in prosecutions for crime, the question of *motive* and the nature of the criminal act, and other circumstances. The point to be noticed about the eyes is their restlessness.

5. **Same — Testimony of Nonexpert Physician. —** The testimony of physicians not specially familiar with insanity is held of but little weight of late years, unless the physician is personally acquainted with the patient, and has had an opportunity of observing him so as to form an intelligible opinion on reasonable data.

6. **Murder of Second Degree — Charge of Court.**—Where on a trial for murder the defense was insanity and delirium tremens, but there was no evidence of temporary insanity from the recent use of ardent spirits, nor of delirium tremens producing settled insanity, it is not error to refuse to charge murder in the second degree.

Appeal from the District Court of Baylor. Tried below before Hon. W. M. Perrill.

Appellant was indicted on the 22d day of September, 1891, for the murder of Jeff Varner, by shooting him with a Winchester rifle, in the county of Motley, on the 10th day of May, 1891.

The court, upon its own motion, changed the venue from the District Court of Motley to the District Court of Baylor County.

Defendant was put upon his trial in the District Court of Baylor County on the 7th day of May, 1892, and the trial resulted in his conviction, with the punishment affixed at confinement in the penitentiary for life.

The defense was insanity and delirium tremens. The record is most voluminous; and inasmuch as the opinion of the court contains a very concise, but very lucid, statement of the facts immediately attendant upon the homicide, it is unnecessary to reproduce the evidence.

*Byron G. Johnson*, for appellant.—1. On the incompetency and inadmissibility of the nonexpert testimony introduced by the State upon the question of insanity, cited: Thomas v. The State, 40 Texas, 60; Holcomb v. The State, 41 Texas, 125; Willson's Crim. Stats., sec. 86; Penal Code, art. 40.

2. The court erred in refusing to charge on temporary insanity brought about by the recent immoderate use of intoxicating liquors, as an element to be considered by the jury in determining the degree of murder of which the defendant should be convicted. Penal Code, art. 40a; Burkhard v. The State, 18 Texas Ct. App., 599; Ward v. The State, 19 Texas Ct. App., 664; Bramlette v. The State, 21 Texas Ct. App., 611.

3. He insisted that the verdict and judgment were against the evidence, which he contended most clearly established the insanity of the defendant.

No brief for the State has come to the hands of the Reporter.

SIMKINS, Judge.—Appellant was convicted of murder, and his punishment assessed at life imprisonment in the penitentiary. He was tried in the District Court of Baylor County, where said cause was carried by change of venue from Motley County. The defense was insanity and delirium tremens.

The defendant complained that the court erred in permitting the testimony of the witness Judge W. R. McGill, and his opinion as to the sanity of defendant, to go to the jury.

The principal issue before the jury was the insanity of the defendant, and to prove his sanity the State, among other witnesses, introduced Judge McGill, who testified that he presided as district judge during the first trial, and observed defendant during that and the present trial, and has examined his eyes as he sat in court; that they are intelligent eyes, and not the vacant and glazed eyes usually seen in insane persons; that he has been a good deal with insane persons, and noticed their eyes, and defendant's eyes differ from those of the insane people he had seen, and it was witness' opinion that defendant was sane when he killed Varner.

This testimony, considering the character of the witness, was certainly

most material and important, and must reverse the case. It was duly excepted to.

How far a nonexpert witness must qualify himself before he can express an opinion on the sanity of a person can not, perhaps, be clearly laid down, but we certainly think it should be to a greater extent than merely looking at a prisoner during the trial in a court room. Such a witness, unless he be an expert, could be of no assistance to the jury, who have the same opportunity of making observations as himself.

In Thomas' case, 40 Texas, 60, the court say: "We think the witnesses should be allowed to give their opinions, together with the facts on which these opinions were based, where it appears that the acquaintance with the party will enable them to form correct opinions of his mental condition." Campbell's case, 10 Texas Ct. App., 560; Harris' case, 18 Texas Ct. App., 294.

It certainly must appear he has some knowledge of the acts and conduct of the person upon whose mental condition he declares his opinion. It is not every witness who may testify to a pertinent and relative fact who can express an opinion. To do this he must have the necessary opportunity of observation so far as to be able to form a reasonable opinion of the existence or nonexistence of the disease. 2 Bish. Crim. Proc., 679.

Nor do we think the witness qualified himself to speak as an expert. It does not appear in what capacity he came in contact with insane people, nor what opportunities of observation were afforded him. Expert testimony in insanity cases has, in general, proved so unsatisfactory that only those who are expert in mental diseases or psychological studies are regarded as authority, for it is a knowledge rarely attained, and involving much study, observation, and experience. Commonwealth v. Rich, 14 Gray, 335; Russell v. The State, 53 Miss., 367.

But certainly we know of no author or authority who lays down "the lack-lustre appearance of the eyes" as the crucial test of insanity. If it was, there would be small need of expert or other testimony; but as the priest of old looked upon the leper sore and pronounced one unclean, so the jury could declare "insanity." Such eyes are said to be an indication of imbecility, but such a test is wholly inapplicable to the innumerable forms and phases of insanity which baffle the skill of the expert. It does not even permit "the common leer of the lunatic, or the savage glare of the maniac."

Messrs. Wharton & Stille, in their able work on Medical Jurisprudence, lay down five tests by which insanity may be detected. Each test involves many subsidiary facts. Section 86. In reference to the first test, "The physiognomy," we are directed to examine *the entire* exterior of the subject, his postures, motions, gestures, eyes, nose, mouth, words, and intonations. Sections 100 and 101. The point to be noticed about

the eyes is their restlessness, as " they lack the calm, unobstructed gaze of sanity, untouched by passion or excitement."

Mr. Bishop says the evidence relied upon to show insanity is the language and conduct, in which is included the question of motive, and the nature of the criminal act, and other circumstances.   Bish. Crim. Proc., 687a.   We think the evidence is unsustained by authority and inadmissible.

But the most serious question in the case is whether the evidence supports the finding of the jury as to the guilt of appellant.   The evidence shows defendant twice attempted to kill deceased the night before the homicide, but was prevented; that, armed with a 16-shooting rifle, he repeatedly and publicly announced his determination to kill him; that he was drinking, but not drunk—in fact, was seldom, if ever, seen drunk; that next morning, seeing deceased at a distance, in company with two others, walking, he mounted some one's horse, and galloped down the road, beating the horse with the barrel of his Winchester rifle.   On arriving near deceased, he walked within five steps, and demanded some money.   Deceased replied he had no money, or knew nothing about any money, and defendant instantly killed him.   He was arrested, in spite of his resistance, while getting ready to shoot again.   It is not shown that deceased owed defendant one cent.   Deceased seems to have known nothing about the matter, and in all probability it existed only in the imagination of the defendant.   The testimony shows a similar act.   In 1889, he insisted he had given his note for $60 to Mr. Bryant, of Lamar County, on whose farm he had worked, and to whom he tendered the money and demanded his note, threatening to injure him because he did not produce it.   In truth, Mr. Bryant had no claim, and had never held his note, but got away from him by promising to bring it around to him.

The fifth test, laid down by Wharton & Stille as one of great importance, is " the nature of the act;" that is, as being characterized by insanity, want of motive, and inconsequentiality.   Section 112.   Certainly the record does not disclose the slightest reason or motive for the homicide, and the State's witnesses are unable to assign any.   As to proof of insanity before and after the homicide, a number of the witnesses testified.   Those who knew him longest, including physicians who attended him, and also the family physician, testified not only to facts indicating insanity, but swore to their belief of his insanity; and some of those who worked with him in Motley County testified to the fact of his peculiar ways, his avoidance of company; while the jailers and physicians who had observed him for a year were outspoken in their belief of his insanity.

Again, the evidence undoubtedly shows that defendant's mother was one of a family of four sisters and two brothers living in DeKalb County, Alabama, and the oldest brother was very peculiar and eccentric; that two of the sisters were maniacs, and were secured by chains to prevent

injury to themselves and others; that one of the defendant's sisters is now in the lunatic asylum in Tuscaloosa; that the family moved to Lamar County, Texas, in 1875; that since their arrival one brother has been confined to the lunatic asylum at Austin; that another brother farms and preaches in Montague County, but is of unsound mind; that still another sister, in Lamar County, is weak-minded.

To meet this proof, the State introduced some six witnesses, whose acquaintance extended from one year to a few months, who testified to their belief in defendant's sanity, without stating any reason therefor; also two physicians, who only saw the prisoner during the trial, and heard the testimony, and who in no special manner qualified themselves as experts in mental diseases.

Conceding the fact that the existence of insanity in many of the immediate relatives of defendant does not prove that defendant is insane, still it is strongly corroborative of testimony tending to prove his insanity, and assigns a cause for acts which must otherwise be imputed to malice. The evidence for the defense seems, too strong merely to be swept away by the character of the rebutting testimony or the character of expert testimony on the part of the State. Generally, as insanity is a disease, any practicing physician is regarded as competent to testify as an expert. Of late years, however, the care of the insane has become a separate branch of the profession; and the testimony of physicians not specially familiar with it is of but little weight, unless the physician is personally acquainted with the patient, and has had an opportunity of observing him, so as to form an intelligible opinion on reasonable data. 2 Bish. Crim. Proc., 687; Thomas v. The State, 40 Texas, 60; Commonwealth v. Rich, 14 Gray, 335; Russell v. The State, 53 Miss., 367; Reed v. The State, 62 Miss., 405.

We do not think the court erred in refusing to charge murder in the second degree. There is no question of temporary insanity from the recent use of ardent spirits, nor is there any evidence of delirium tremens or settled insanity. It is a case of hereditary insanity, or murder upon express malice.

For the admission of the testimony of Judge McGill, and because we are not satisfied that the verdict of the jury is supported by the evidence, and prefer that another jury pass upon the question of insanity, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.