## Louis Betts v. The State.

### No. 3146.    Decided October 11, 1905.

**1.—Murder—Jury and Jury Law—Harmless Error.**

On a trial for murder where the defense was insanity the court was not warranted in making the remark that temporary insanity was not a defense by that name for crime; however, viewed in connection with the charge of the court it was not calculated to prejudice defendant.

**2.—Same—Evidence—Non-Expert Witnesses—Insanity.**

On a trial for murder, before a non-expert witness can give his opinion as to the sanity or insanity of the accused on trial, it must be shown that the witness had adequate means of observation of forming an accurate judgment as to such mental condition, considered with reference to its supposed character or degree, and this testimony must show such intimate and close relations between himself and the alleged insane person, as fairly to lead to the conclusion that his opinion will be justified by his opportunity for observing the party; and the witness must state the facts, conduct, conversations and business transactions, and give the action of the man; and where the testimony of the witnesses for the State did not show such conversations, facts, or conduct of defendant there was no predicate for their opinions as to his sanity.

**3.—Evidence—Hypothetical Case—Expert Testimony.**

On a trial for murder it is not proper for counsel for the State in stating a hypothetical case to an expert witness on the question of insanity, to state matters in contravention thereof, or in antagonism to the proof offered, and where counsel may differ as to the facts stated the matter should be left to the jury. However, the bill of exceptions as explained by the court must prevail in such matter.

Appeal from the District Court of Jefferson.    Tried below before Hon. H. B. Short, special judge.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The State's testimony showed that defendant was seen on the night of the 15th of August, 1904; that pistol shots were heard in the direction of the saloon where the deceased was found lying on the gallery in front of the saloon, dead. Defendant was lying near deceased, groaning and the pistol was lying between them on the floor. Defendant said after reviving or waking, "Charlie, are you dead? if not I will take another shot at you," and reached for the pistol, and it was taken away from him, a witness saying, "You have already killed him," defendant then said, "If so I am willing to die." Defendant then called for Lena Walters saying that he had something to tell her that could be told to no one else. Defendant talked like a man that was delirious, that night. Defendant and deceased had been seen drinking and talking together on the day of the homicide, which took place about 9 o'clock at night.

The testimony in this case is very voluminous and consists principally of facts concerning the sanity or insanity of the defendant.

*Makemson, Hudson & Lord,* for the appellant. On question of expert testimony: Burt v. State, 38 Texas Crim. Rep., 397; 40 S. W. Rep., 1000. On question of non-expert testimony: Williams v. State, 37 Texas Crim. Rep., 348; 39 S. W. Rep., 690; McLeod v. State, 31 Texas Crim. Rep., 331; 20 S. W. Rep., 749; Freeman v. State, 81 S. W. Rep., 955; Davis v. State, 69 id., 73; Harrison v. State, 39 id., 500; Shirley v. State, 37 Texas Crim. Rep., 475; 36 S. W. Rep., 267.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—This conviction was murder in the second degree, the penalty assessed being confinement in the penitentiary for twenty years.

Appellant made a motion to change the venue, which was contested by the State; and he reserved a number of exceptions to the rulings of the court in the hearing of the motion and also to the overruling of the motion to change the venue. Inasmuch as this question is not likely to arise again in the same form on another trial and as the case will be reversed on other grounds, we will not discuss the matters presented in said motion.

Appellant also made a motion to continue the case based on the absence of a number of witnesses. The defense was insanity, and these witnesses were desired to prove the same. We are inclined to the view that said motion should have been granted.

During the trial, while venireman Booth was being examined on his voir dire, defendant's counsel asked said witness, the following question: "Have you any prejudice against temporary insanity as a defense in a criminal case." The county attorney objected to said ques-

tion, which was sustained by the court. The court in that connection remarked, "temporary insanity is not a defense for crime by that name." Appellant says that said remark of the court was in the presence and hearing of one of the jurors to wit: Bowie, who had already been taken and sworn as a juror. We do not believe the court was warranted in making the remark, but it does not occur to us that viewed in connection with the charge of the court, it was calculated to prejudice appellant.

Appellant reserved a number of bills of exception, from 11 to 22 inclusive, on the mode of examining non-expert witnesses. We will select therefrom several of said witnesses, which will indicate in a general way the point raised. Will McGovern was placed on the stand by the State, and it was proved by him, that he had been living on Spindle Top about three months, prior to the homicide. "During the time I lived there I had an opportunity of seeing defendant, Louis Betts, and observing him frequently. I saw him most every day. Thereupon counsel for the State propounded the following question: 'State whether or not in your opinion during the time, and about three months prior to the homicide he was sane or insane?' Defendant objected to the answer of the witness on the ground, that he had not qualified to speak as a non-expert; that the proper predicate had not been laid, because the witness did not testify what was said and done by defendant during such time, nor the manner in which appellant had conducted himself, or how he appeared; and that he stated no fact upon which the jury could ascertain upon what witness based his opinion." The objection was overruled and witness was permitted to testify that he was sane. Jack Crews, another witness was introduced by the State, and testified that he stayed at Spindle Top, and had known Louis Betts out there for two and one-half years; that he boarded at Mrs. Walters, where appellant boarded, five or six months; during that time he saw Betts every day. On this predicate witness was permitted to state that he regarded appellant as sane. B. F. Williams, another witness was placed on the stand by the State, and testified that he boarded at the house with appellant for four or five months,—the same house run by Charley Walters; that during the time he sometimes talked with Betts around the place; was in the same dining room, but could not say he was ever at the same table with him; that he was in his presence when he had conversation with other parties; had opportunities to observe him to some extent. On this predicate witness was permitted to state that he regarded appellant as sane. John Houston was placed on the stand by the State, and testified that he boarded at the same place with appellant something like a year, but could not say when it was; think it was year before last at the Beaumont House; during that time saw him every few hours, and took a drink with him sometimes; knew him subsequently on the Hill; saw him three or four times a year, sometimes oftener after he moved on the Hill. On this predicate he was permitted to give his opinion that

appellant was sane. Elsy Jefferson was placed on the stand by the State, and testified that she worked for Mrs. Walters on Spindle Top, and knew Louis Betts; he was there at the time. Had opportunity to see him most every day most of the time; she waited on the table and sometimes saw him talking to different people. On this predicate she was permitted to state that appellant was sane. The State placed witness Grosskopf on the stand, and he testified that he knew Louis Betts since 1900; used to work for witness on the Rice farm; that he associated with him every day. On this predicate witness was permitted to state that he regarded appellant as sane.

The above affords a fair specimen of the character of the testimony of the non-expert witnesses introduced by the State. The contention of appellant is that not one of said witnesses stated any particular conduct of appellant or any conversation with him, before the jury as a predicate on which to base their opinions. The mere fact that they knew him, saw him daily, it is contended was not sufficient; that these were non-expert witnesses, and that the jury should have been apprised as to the fact or facts on which these witnesses predicated their opinions. This question was thoroughly discussed in Williams v. State, 37 Texas Crim. Rep., 348, and a number of authorities from this and other States cited in support of the proposition that before a non-expert witnes can give his opinion as to the sanity or insanity of an accused on trial, it must be shown that the witness had adequate means of observation; that is, he must have had the opportunity of forming an accurate judgment as to the existence of insanity, considered with reference to its supposed character or degree. He must first state what he personally knows of the party's sayings and doings indicating insanity. His testimony must show that such intimate and close relations existed between the alleged insane person and himself as fairly to lead to the conclusion that his opinion will be justified by his opportunities for observing the party. He must state the facts, conduct, conversations and business transactions, give the look of the eye and the action of the man. But, the opinion of a person, not an expert, is not evidence, unless the facts upon which it is based have come under his own observation, and unless, he states those facts to the jury. In addition to the authorities cited in said opinion, we also refer to McLeod v. State, 31 Texas Crim. Rep., 331; Ellis v. State, 33 Texas Crim. Rep., 86.

It will be observed from the bills of exception, that not one of the witnesses stated any fact, such as conversations or conduct of appellant as a predicate for their opinions as to his sanity. Some of them knew him for a considerable length of time; evidently they must have had conversations with him, or heard others have conversations with him, which suggested to them that appellant was sane, like other men. Certainly some of them had opportunity to do so, and under all the authorities, the jury should have been afforded this character of testimony, in order that in connection with the same they might properly

weigh and pass upon the opinion of the non-expert witness. As was said' in the Williams case, supra: "The application of the rule adopted by the State with reference to these witnesses would be to authorize every man in the community who might have an acquaintance with the person on trial, whether intimate or not, without stating any facts, to go before the jury and give his opinion as to the sanity of the defendant on trial. This might result in testing the sanity of a person on trial by numbers alone; that is, by number of witnesses, who, from one cause or another, could be brought to bear in favor of or against him. Such, in our opinion, was never the intention of the law. Moreover, if non-experts are allowed to state their opinions, without giving the facts upon which they are based, and experts are then introduced, the. hypothetical case put to them would consist solely of opinions, without facts, of such non-experts, and on this alone they would be authorized to give to the jury an opinion as to the sanity of defendant. Such a result manifests the absurdity of allowing this character of evidence." In the view we take, the court committed a material error in authorizing this testimony to be admitted.

The State propounded a hypothetical case to Dr. W. F. Williams, which embraced a number of facts. Appellant contends, first, that they did not embrace all the facts testified to by the witnesses on the issue of sanity; and second, that on some points the question contravened the facts stated. As to the first proposition, we would state, that the rule laid down in Burt v. State, 38 Texas Crim. Rep., 397, shows that it is competent for either party to state a hypothetical case, without embracing all the facts, provided full opportunity is permitted to the other party to propound his hypothetical case, embracing such omitted facts. But we are not apprised of any authority for counsel in stating a hypothetical case, to state matters in contravention of or in antagonism to the proof offered. Of course, there may be cases where counsel may differ as to the facts stated; and in all such cases this must be left to the jury. The bill of exceptions shows that the State, in propounding its hypothetical case, among other things stated, that the evidence showed that just· prior to the homicide, defendant and deceased had angry words, in a hot and angry manner, in German (which we do not understand) and that defendant did most of the talking, and acted in a sullen, insolent and angry manner; and further, that the question propounded was based on the theory that defendant had no illusions, delusions, or hallucinations, while the testimony of McKinney is, that defendant a short time before the homicide at one time believed he was a wild bull, and at another that he was a billy-goat. And the testimony of Dr. Barr and Dr. Matkin shows that a short time after the homicide he was wild and uncontrollable, and had to be moved downstairs in the hospital, and believed there were persons in the next room who wanted to hang him. The court approves the explanation or amendment to this bill of exceptions prepared by the county attorney, to the effect that John Gillespie testified that just before the homicide,

deceased and defendant were in the saloon drinking, and deceased was talking in an excited manner and rapidly gesticulating, and that defendant was sullen and insolent in his answers; that defendant had a delusion that he was a billy-goat or bull is not in the testimony of any witness, but the argument of counsel for the State. If we recur to the statement of facts, the court is eviently incorrect in adopting this latter explanation of the county attorney, because there is tesimony in the record showing that defendant believed he was a billy-goat at one time, and butted the refrigerator with his head; and at another time he thought himself a bull. This is the testimony of F. H. McKinney. However, as we understand the rule, the bill of exceptions as explained by the court must prevail, and as explained we fail to see any error.

We do not deem it necessary to discuss other questions raised in the assignments; but for the errors discussed, particularly the introduction of the non-expert testimony against appellant, without any evidence of conversations or conduct of appellant in connection therewith, the case must be reversed and the cause remanded.

*Reversed and remanded.*