**SPRINGER et al. v. STRAHAN et al.**

No. 2609.

Court of Civil Appeals of Texas.
Tenth District at Waco.

April 27, 1944.

Rehearing Denied May 25, 1944.

McAlister & Tucker, of Nacogdoches, for appellants.

Vernis Fulmer, of Nacogdoches, for appellees.

HALE, Justice.

On May 1, 1939, M. Strahan and wife, Nancy, conveyed 175 acres of land which they were then occupying as their homestead to T. B. Springer and wife, the latter being their eldest child. The deed of conveyance recited a consideration of $10 cash paid and the further consideration that grantees should take care of grantors and their unmarried daughter, Mattie, for the remainder of their natural lives. Thereafter Mrs. Strahan died and on December 8, 1942 her son, E. W. Strahan, and all of his sisters, except Mrs. Springer, jointly instituted this suit against the Springers seeking to cancel such deed upon allegations that their parents were not mentally competent to understand the nature and effects thereof and that the deed was executed and delivered as the result of undue influence exerted upon the grantors by the grantees. Defendants answered, among other things, with a plea in abatement, asserting therein that plaintiffs had no interest in the subject matter of the suit and therefore no authority to maintain the same and that M. Strahan was a necessary party, although he had not been joined as such. Francis Bates, who was one of the plaintiffs, then filed a plea in intervention on behalf of M. Strahan as his next friend, alleging that her father was a non compos mentis and adopting on his behalf the pleadings of the plaintiffs. The case was submitted to a jury on special issues, in response to which the jury found that M. Strahan and his wife were each of unsound mind on May 1, 1939, in the sense that each was wanting in mental capacity to such a degree that he and she did not know and understand the nature, results, effects and consequences of his or her act in executing the deed, and that each was caused to sign the deed through undue influence. Thereupon the court rendered judgment canceling the deed and the Springers have appealed.

Appellants say the court erred in overruling their plea in abatement because if the deed in controversy was and is invalid, then in that event the property constitutes the homestead of M. Strahan and under the Constitution and laws of this State the same is not subject to partition among the heirs of Nancy Strahan. We cannot wholly agree with this contention. When Nancy Strahan died intestate, her one-half interest in the community property immediately passed to and vested in her heirs at law, subject to the homestead rights of her surviving husband. Reconstruction Finance Corporation v. Burgess, Tex.Civ.App., 155 S.W.2d 977, er. ref. Although under the express provisions of Art. 16, Sec. 52 of the Constitution, Vernon's Ann.St., the property in controversy is not subject to partition among the heirs of Nancy Strahan in any event so long as her surviving husband may live and claim the same as a homestead, we see no reason

why any or all of such heirs should be required to wait until after the death of their father in order to test the validity of the deed as a muniment in derogation of the legal title asserted by them. M. Strahan was undoubtedly a necessary party to this suit. However, no question is here presented as to whether the individual interest of Francis Bates is adverse to that of M. Strahan in this litigation, or if so as to whether such conflicting interest, if any, was such as to disqualify her from properly acting as next friend for her father. Consequently we do not pass upon the question as to whether M. Strahan was brought before the court in a manner authorized by law because that question has not been raised.

By appropriate assignments appellants complain of the action of the trial court in permitting a number of witnesses to testify over timely objections that in their opinion M. Strahan or Nancy Strahan or both did not have sufficient mental capacity on May 1, 1939, to understand and appreciate the nature and effects of their acts in the execution and delivery of the deed in controversy. For example, while Georgie Doss was testifying on behalf of appellees she was asked the following question: "Take Mr. Strahan on May 1, 1939, and prior thereto, having known and seen him daily throughout your life and knowing his character and habits, state whether or not, in your opinion, he had sufficient mental capacity to know the nature and effects of his acts." Counsel for appellants objected to the question and the proposed answer thereto upon the grounds that the same called for the expression of a legal conclusion on the part of the witness, invaded the province of the jury and permitted the witness to express an opinion on a matter about which she was not shown to be qualified. The court overruled the objections, to which appellants duly excepted, and the witness answered: "Due to his age, he probably didn't if it was pretty complicated." Although the witness had testified that she was reared in the community where Mr. Strahan lives, had known him all of her life, saw him practically every day and knew his characteristics, habits and general nature, she did not testify what her observations in that regard had been nor did she testify to any unusual conduct, expressions, peculiarities or disposition on the part of Mr. Strahan tending to show that he was a non compos mentis or a person of unsound mind or as to what his characteristics, habits or general nature

might have been. In other words, the witness did not testify to the existence of any fact or facts, except that of the grantor's age, upon which she based her opinion, and she did not even testify that she knew his age or if so how old he was.

While any witness, whether an expert or a layman, may properly give his or her opinion as to whether or not the grantor in a deed was capable of knowing or understanding the nature and effect of his or her acts at a given time after having first stated sufficient relevant facts to form a reasonable basis for such opinion, we do not think it is ever proper for a lay witness to be permitted over timely objections to express his or her opinion as to the mental unsoundness of another person unless and until such lay witness shall have first testified to the existence of some fact or facts tending to form some possible basis for such an opinion. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64; Smith v. Guerre, Tex.Civ.App., 175 S.W 1093; Duckels v. Dougherty, Tex.Civ.App., 226 S.W. 720; Colvard v. Goodwin, Tex. Civ.App., 24 S.W.2d 786, er. dis.; Stell v. Salters, Tex.Civ.App., 83 S.W.2d 742; Chambers v. Winn, Tex.Civ.App., 133 S.W. 2d 279; Id., 137 Tex. 444, 154 S.W.2d 454; Pryor v. Awbrey, Tex.Civ.App., 165 S.W. 2d 214, error refused. Therefore, since Georgie Doss did not testify to the existence of any fact or facts, if any, upon which she based her opinion that M. Strahan probably did not have sufficient mental capacity to know the nature and effects of his acts "if it was pretty complicated," we have concluded that the trial court erred in overruling appellants' objections to the question and answer of the witness.

Moreover, it is readily apparent, we think, regardless of the exact form of the question as propounded to the witness, that Miss Doss was attempting to testify and did in effect testify, without delineating any specific fact as a basis therefor, that in her opinion due alone to the age of M. Strahan and the complications involved in and incident to the deed in controversy, he probably did not have sufficient mental capacity to know and appreciate the nature and effect of his acts in executing and delivering such deed. Although it would have been permissible for the witness, after first stating sufficient facts to form the basis of her conclusion, to have then testified that in her opinion Mr. Strahan was of unsound mind or was not mentally capable of knowing or understanding the na-

ture and effects of his acts generally, it was not proper for her to express an opinion on the mental capacity of Mr. Strahan to execute the deed in controversy. Such testimony constituted the expression of a legal conclusion on the part of the witness and an invasion of the province of the court and jury, contrary to well-established rules of law. Pickering v. Harris, Tex. Com.App., 23 S.W.2d 316; Harrison v. Davis, Tex.Civ.App., 58 S.W.2d 1025, er. dis.; Dodson v. Kuykendall, Tex.Civ.App., 127 S.W.2d 348, error dismissed; Cardinal v. Cardinal, Tex.Civ.App., 131 S.W.2d 1005, error dismissed.

No useful purpose would be served by setting forth the testimony of other witnesses on behalf of appellees tending to prove the mental condition of M. Strahan and his wife because the testimony of Miss Doss and the objections and rulings of the court with respect thereto are fairly typical of all the evidence elicited on these issues from the other witnesses who testified on behalf of appellees.

We find no direct evidence in the record of any undue influence exerted by appellants, or either of them, upon either of the grantors in the deed, all of such evidence being to the contrary. As said by this court in the case of Stewart v. Miller, Tex.Civ.App., 271 S.W. 311, 316, error refused: "Such issue presupposes sufficient mental capacity to make a valid conveyance. Such issue is proved only when it is shown that such influence was exercised, and that it subverted and overpowered the will of the grantor and caused the execution of a conveyance which the grantor would not have executed but for such influence." While the ultimate issue of undue influence may be raised by the proof of adequate circumstances, we do not think the meager and unsatisfactory circumstantial evidence in this case was sufficient to support the findings of the jury to the effect that M. Strahan and wife were each caused to sign the deed through undue influence, even though the jury had found that such influence was exerted by appellants.

During the progress of the trial appellants placed M. Strahan on the stand as a witness in their behalf. He testified in substance that he and his wife knew what they were doing when they signed and delivered the deed in controversy; that it was necessary for them to have some one to take care of them in their declining years; that the Springers had done so to his satisfaction and he wanted to stand by the bargain he and his wife had made with them. After considerable cross-examination of the witness, counsel for appellees propounded to him the following question: "Isn't it a fact that you sued your own father in his dying days?" Counsel for appellants immediately moved the court to discharge the jury and declare a mistrial because the question was so highly prejudicial that the effects thereof could not be removed from the minds of the jury, and although the court instructed the jury to disregard the question entirely, appellants excepted to the action of the court in refusing to grant their motion for a mistrial.

Appellants also placed Clarence Layton on the stand as a witness in their behalf. He testified that he had known Mr. and Mrs. Strahan practically all of his life; that he had traded with them for about thirty or thirty-five years at the store they operated; that in his opinion they were of sound mind on May 1, 1939. On cross-examination of this witness counsel for appellees proved by him that he had six sisters, and after proving that his mother was dead, he asked the witness this question: "You finally got hold of that estate?" Counsel for appellants immediately moved the court to discharge the jury and declare a mistrial because of the misconduct of counsel in asking such question, whereupon the counsel for appellees stated they would withdraw the question. The court then instructed the jury to disregard the question but overruled the motion to declare a mistrial and counsel for appellants excepted.

Under appropriate assignments appellants say the court erred in overruling their respective motions to declare a mistrial because of the prejudice aroused in the minds of the jury as a result of the improper conduct of counsel in propounding the foregoing questions, and in overruling their motion for a new trial based thereon. There can be no doubt that each of these questions was highly improper, prejudicial and inflammatory. No commendable reason is suggested in the record why either was asked. Both were reasonably calculated to arouse in the minds of the jurors an intense degree of resentment against the witness to whom each was propounded. In view of the extremely weak and meager circumstantial evidence, if any, in support of the findings of the jury that the deed in

controversy was executed as a result of undue influence, we are of the opinion that the trial court erred in refusing to grant appellants' motion for a new trial based upon their contention that the court should have discharged the jury for prejudice on account of the improper and inflammatory questions thus propounded to the witnesses Strahan and Layton, respectively.

Because of the errors discussed, the judgment appealed from is reversed and the cause is remanded for another trial.