**WHATLEY v. McKANNA et al.**

No. 2614.

Court of Civil Appeals of Texas. Eastland.

Jan. 9, 1948.

Rehearing Denied Jan. 30, 1948.

Dibrell, South & Snodgrass, of Coleman, for appellant.

W. B. Chauncey, of Wichita Falls, and Rob O'Hair, of Coleman, for appellees.

GRAY, Justice.

This is a suit appealed from the District Court of Coleman County, Texas, involving a contest of the will of Dan T. Whatley, deceased. The appellant, Mrs. Sue C. Whatley, is his surviving wife and principal legatee. Mrs. Edith Whatley McKanna and her four sisters, all daughters of said deceased by a former marriage, are the contestants and appellees here. The deceased died in Coleman County on July 16, 1946. The instrument was dated July 5, 1944. Application for probate was filed in the County Court of said County on July 23, 1946. The will was admitted to probate by the County Court from which contestants appealed to the District Court. This trial was before a jury, and the court submitted two, and only two issues, viz.:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that at the time Dan T. Whatley executed the Will introduced. in evidence he had 'Testamentary Capacity', as that term is defined in the charge? Answer 'Yes' or 'No'."

The jury answered "No."

"Special Issue No. 2:

"Do you find from a preponderance of the evidence that at the time Dan T. What-

ley executed the Will introduced in evidence he was acting under the undue influence of Mrs. Sue C. Whatley? Answer 'Yes' or 'No'."

The jury answered "Yes."

The court thereupon rendered judgment denying probate of the will, and after denial of Motion for New Trial, proponent (appellant) perfected her appeal to this court.

Appellant has ten points, all of which are countered by appellees. The case has been especially well briefed by both sides, which has been of great assistance to this court in disposing of the case. While all the points have been urged with vigor, and stoutly resisted by appellees, appellant especially stresses Point One which complains of the alleged error of the trial court in excluding Direct Interrogatory No. 8, and the answer thereto, of Mrs. Grady Duling, the only living subscribing witness to the will, Mrs. Duling having testified by deposition. Direct Interrogatory No. 8, was as follows: "At the time he signed said will was Dan T. Whatley of sound mind?" The answer of the witness to said interrogatory was: "Yes, at the time Dan T. Whatley signed the said will he was of sound mind." In none of the direct interrogatories was the said witness asked as to her previous acquaintance and contacts with the deceased, and her opportunity for observing him. But in answer to cross interrogatories, it was elicited from the said witness that she had not seen the deceased before or since she witnessed said will; that she had no conversation with the deceased at said time, and that she could remember nothing that transpired at said time, except that the attorney dictated said will to her, she being said attorney's secretary; that she typed said will, which was then signed by the testator in the presence of herself and said attorney, and that at the request of the testator, she and said attorney signed the same as subscribing witnesses in the presence of the testator and of each other. A more detailed statement of her evidence will be made later in this opinion. The objection made to said interrogatory and answer was that the witness had wholly failed to qualify to testify as to the soundness of mind of the deceased. Appel-

lant contended in the trial court and contends here that a subscribing witness is not required to qualify as in the case of non-subscribing witnesses, but that said witness was entitled to testify as to said testator's soundness of mind solely by reason of being such subscribing witness.

██ Art. 3348, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 3348, enumerates the facts which must be proved to admit a will to probate, and one of such facts is that the testator must have been of sound mind. To establish a legal will, concurrence of all statutory requirements must be proved. Dannenbauer v. Messerer's Estate, Tex.Civ.App., 62 S.W.2d 235. There exists in Texas no presumption of sanity of a testator. But this will having been admitted to probate by the County Court, the burden was then on contestants to prove mental unsoundness of the testator.

Due to the importance of the question now under consideration, we deem it advisable to set out in detail the cross interrogatories propounded to the witness, Mrs. Grady Duling, and her answers thereto.

"1—If you have answered direct interrogatories that you witnessed the will in question, then is it not a fact that you have no independent recollection of this transaction other than that the will was dictated to you by Mr. Cox, that you transcribed same, and signed same as a witness? A.—Yes, it is a fact that I have no independent recollection of this transaction other than that the will was dictated to me by Mr. Cox, that I transcribed same, and signed same as a witness.

"2—Didn't you say to W. B. Chauncey, attorney for the contestants, in Temple, Texas, at your hotel, and in the presence of Mrs. Reynolds and Mrs. Rendon, that you did not remember this transaction except that you did remember writing the will and signing same as a witness? A.— Yes, I told W. B. Chauncey, attorney for the contestants, in Temple, Texas, at the Hawn Hotel, and in the presence of Mrs. Reynolds and Mrs. Rendon, that I did not remember this transaction except that I did remember writing the will and signing the same as a witness.

"3—Isn't it a fact that on that occasion on the night of July 29, 1946, and in your hotel, that you stated to W. B. Chauncey in the presence of the two ladies that you did not remember anything about the appearance of Dan T. Whatley at the time the will was signed. A.—Yes, it is a fact that on that occasion on or about the night of July 29, 1946, in the Hawn Hotel, that I stated to W. B. Chauncey in the presence of the two ladies that I did not remember anything about the appearance of Dan T. Whatley at the time the will was signed.

"4—Didn't you tell us on that occasion that you had no conversation whatever with Dan T. Whatley at the time the will was signed? A.—I do not recall that upon the occasion in question I made any statement with reference to whether I had conversation with Dan T. Whatley at the time the will was signed, nor do I recall that I was asked whether I had a conversation with him at such time.

"5—Isn't it a fact that you said to W. B. Chauncey at that time that if you could see the will of Dan T. Whatley you might be reminded of some things that happened there in Mr. Cox's office which might refresh your memory, and isn't it a fact that at that time I showed you a certified copy of the will and you still stated that you had no recollection of what took place, except that you wrote the will as dictated by Mr. Cox, and that you signed same as a witness? A.—Yes, it is a fact that I stated to W. B. Chauncey at that time that if I could see the will of Dan T. Whatley I might be reminded of some things that happened there in Mr. Cox's office which might refresh my memory, and it is a fact that at that time he showed me a certified copy of the will, and I still stated that I had no recollection of what took place, except that I wrote the will as dictated by Mr. Cox, and that I signed same as a witness.

"6—If you say in your answer to the above questions that such were not the facts, then please state fully what you said to W. B. Chauncey in the presence of said two ladies on that occasion relative to your remembrance of what took place. A.—I have answered yes to the above cross-interrogatories with the exception of No. 4. If Mr. Chauncey asked me whether I had any conversation with Mr. Whatley at the time the will was signed, I do not remember this, but if I had any conversation with Mr. Whatley when he signed the will, I do not remember it at all, and feel sure that I did not have any conversation with him.

"7—Had you seen Dan T. Whatley prior to the signing of the will? If so, how many times and where. A.—No, so far as I know, I had not seen Dan T. Whatley prior to the signing of the will.

"8—Did you see Dan T. Whatley after the will in question was signed? If so, how many times, the dates, and where he was at the time? A.—No, so far as I know, I did not see Dan T. Whatley after the will in question was signed."

The competency of this witness to testify as to the mental condition of the testator was challenged by contestants, and unless she was competent to give such testimony solely by reason of being a subscribing witness to the will, her competency was a question for the court, subject to review for abuse of discretion. 19 Tex.Jur. page 157, Sec. 103. If the witness admits that he knows nothing about the matter under inquiry, lack of qualification is clearly shown and the opinion of the witness is wholly inadmissible. 19 Tex.Jur. page 148, Sec. 98. From the answers of this witness to the cross interrogatories, it will be noted that the witness had never seen Dan T. Whatley before the signing of the will; that she had not seen him since; that she had no conversation with him at the time; had no recollection as to what transpired, except that she transcribed the will from dictation by the attorney; that she signed it as a subscribing witness at the request of the testator, after he had signed it in her presence and in the presence of said attorney. She could recall no other fact or circumstance in connection with the signing. Did the trial judge abuse his discretion in refusing to admit in evidence, her opinion that Dan T. Whatley was of sound mind? The will was an unnatural will. He had been married to Mrs. Sue C. Whatley only two years. He had five daughters by a former marriage and was shown to have been very fond of them. He had a fairly large estate. His daughters were to receive nothing whatever from said estate which

they had aided him in accumulating and conserving before his second marriage. His competency to make a will was one of the two controlling issues in the case. The witness, because of lack of previous contacts with the testator and no opportunities for observing him, and with scant recollection as to what took place on the occasion of signing the will, was certainly not competent to give an opinion as to the testator's soundness of mind, neither is it the intent or purpose of the law to give probative force to such testimony in disposing of estates in a manner contrary to our laws of descent and distribution.

█ But appellant contended in the trial court and contends here that said witness, being a subscribing witness to the will, was exempt from stating or being required to state any facts upon which her opinion as to the mental condition of the testator was based. In support of this contention, appellant cites the case of Thornton et al. v. McReynolds et al., Tex.Civ.App., 156 S.W. 1144, in which it was said: "A subscribing witness to a will, whether he is an expert or not, without stating the facts on which he bases it, can state his opinion as to the mental condition of the testator. Abbott's Trial Ev. p. 148; 1 Wigmore, Ev. § 689; 3 Wigmore, Ev. § 1936; 28 A. & E. Enc. Law (2d Ed.) p. 101."

We have before us the original statement of facts in said case, which as here, was a contested will case. The county court admitted the will to probate and contestants appealed to the District Court, which sustained the probate of the will, from which a further appeal was taken to the Court of Civil Appeals. The subscribing witnesses were Dr. Thornhill, the personal physician of the testatrix, and W. T. Ridley, for a number of years, her banker and business adviser. Each of said subscribing witnesses testified at length as to contacts with, and observation of the testatrix for several years and to the date of the will. The contestants objected to the admission of their testimony, and that of other witnesses giving similar testimony, because they had not qualified as experts or had not stated facts sufficient on which to base an opinion. The witnesses, including Dr. Thornhill, all testified as non-experts. The

contestants seem to have taken the position that only experts could testify as to the mental condition of the testatrix. The Court of Civil Appeals affirmed the judgment of the trial court and the Supreme Court denied a writ of error. From the decision of the Court of Civil Appeals, we quote: "In the county court the issues were determined against appellants, and the instrument was admitted to probate as the last will of Mrs. Mayers. On the appeal prosecuted by appellants to the district court, the trial was to a jury, who found, on testimony which we think would not have supported findings to the contrary, that Mrs. Mayers was of sound mind at the time she executed the instrument, and that she was not induced to execute it by any undue influence exerted over her.

"W. T. Ridley and G. F. Thornhill were the subscribing witnesses to the will. The court permitted each of them, over appellants' objection thereto, on the ground that he had not qualified as an expert, nor stated facts sufficient as a basis for an opinion, to testify he was of the opinion the decedent was of sound mind at the time she executed the will. It was not error to admit the testimony. A subscribing witness to a will, whether he is an expert or not, without stating the facts on which he bases it, can state his opinion as to the mental condition of the testator. Abbott's Trial Ev. p. 148; 1 Wigmore, Ev. § 689; 3 Wigmore, Ev. § 1936; 28 A. § E. Enc. Law (2d Ed.) p. 101.

* * * * * *

"However, we do not care to rest our conclusion that the judgment should not be reversed for errors in the charge complained of on the fact that the instruction was in the language of appellants' pleadings. To our minds, a more satisfactory reason for overruling appellants' contention lies in the fact that the testimony demanded the finding made by the jury. The testimony relied upon to defeat a probate of the will, we think, was not of sufficient probative force to support a finding by the jury contrary to the one they made. Therefore, if there was error in the instruction, it should be treated as harmless."

From the refusal of the Supreme Court to grant a writ of error, it does not necessarily follow that every expression of the

Court of Civil Appeals was approved. The Court of Civil Appeals had found that there was no evidence of probative force that the testatrix was of unsound mind, or acting under undue influence, and there was no evidence that would have supported a judgment to the contrary, and that under the evidence, the District Court rendered the only judgment that could have been rendered in the case. The Supreme Court had no alternative other than to deny the writ, even though there was incorrect dictum in the decision of the Court of Civil Appeals. The question of permitting a subscribing witness to testify as to the mental soundness of the testatrix without stating the facts on which such opinion was based was not before the court and was not in the case.

Appellant cites the Supreme Court case of Garrison v. Blanton, 48 Tex. 299. Said case instead of supporting appellant's contention, holds directly to the contrary as the following excerpt from the decision will show: "It has been held, by this court, in cases of insanity, that 'witnesses should be allowed to give their opinions, together with the facts on which their opinions are based.' (Thomas v. State, 40 Tex. 60, 64, 65; Renn v. Samos, 33 Tex. 760, 766.) That is in accordance with the general rule of evidence, as applicable to witnesses of a transaction who are not experts. (1 Redfield on Wills, 140, 142.)"

We are aware of the fact that in some other jurisdictions, subscribing witnesses to wills may express an opinion as to the mental condition of a testator without stating the facts on which such opinion is based. That is not the case in Texas. In some jurisdictions, it is the rule that a presumption arises that a subscribing witness has made an investigation as to the testator's mental condition before witnessing the will. We have no such presumption in our Texas practice. We have not been cited to any case which holds that such presumption in other jurisdictions would be more than prima facie, or not subject to be rebutted when challenged.

■ Fortunately, we are not left in the dark as to the rule of practice in such cases in our own courts. We think that the point under discussion has been made clear by our Supreme Court and Courts of Civil Appeals, and that the converse to appellants' contention is the recognized law of this State. The leading case is Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 626, 36 L.R.A. 64, by our Supreme Court handed down in 1895. Judge Brown, speaking for the court said: "We consider that the decisions of our own court, cited above, establish the rule that all witnesses, whether subscribing witnesses, experts, or others, who know the facts, and having stated such facts, may express opinions, founded upon their own knowledge, as to the mental condition of the testator. This rule is well sustained by sound reasoning and authority," citing numerous authorities.

Judge Brown had reviewed numerous holdings by our own Supreme Court and of other jurisdictions, and concluded that the decisions of our Supreme Court established the rule there laid down. The rule extended to subscribing as well as all other witnesses; and that the rule was sustained by sound reasoning and authority. The Court of Criminal Appeals in Burton v. State, 51 Tex.Cr.R. 196, 101 S.W. 226, 229, opinion by Judge Henderson, recognized and declared the same rule as applicable in criminal cases. In said case, the issue was as to the sanity or insanity of the defendant. Some of the witnesses who had seen the defendant and conversed with him only one time were, over objection, permitted to state their opinion as to the mental condition of the defendant. In reversing the case, Judge Henderson said: "We think these objections were well taken. This question has come before the court so often that we need only to refer to the authorities on the subject. See Williams v. State, 37 Tex.Cr.R. 348, 39 S.W. 687, Betts v. State [48 Tex.Cr.R. 522], 89 S.W. 413; 13 Tex.Ct. Rep. 885, McLeod v. State, 31 Tex.Cr.R. 331, 20 S.W. 749, and Ellis v. State, 33 Tex. Cr.R. 86, 24 S.W. 894. Here, it seems, the parties had a bare acquaintance with appellant. They saw him only on the one occasion, and then for a short space of time. To authorize a nonexpert to give his opinion on such a state of facts would be a travesty on the law."

The learned Judge then sets out the dangers and abuses that could easily result

from allowing witnesses of such limited opportunities for observation of a defendant to testify as to his soundness of mind. While not binding on this court, the rule applied by said Court of Criminal Appeals is very persuasive.

In 24 Tex.Jur. 428, Sec. 44, the rule is stated as follows:

"The nonexpert witness must have had first hand knowledge of the facts on which he bases his opinion. To permit him to draw inferences from what he had heard would be to place him in the expert class. He must, moreover, have had adequate opportunity to observe the subject of his testimony, and to draw correct conclusions from such observation. While no hard-and-fast rule can be laid down as to the exact amount and extent of the predicate which should precede the testimony of a nonexpert witness on the issue of insanity, the courts are disposed to hold such testimony competent in a given case unless there appears to have been so little knowledge and opportunity shown to form a conclusion that an abuse of discretion in admitting the testimony is apparent. Persons who have seen the accused only on a single occasion and for a short space of time are not qualified to express their opinions as to his sanity or insanity. But the fact that the witness has not had an intimate acquaintance with the person does not render his testimony inadmissible.

"The sufficiency of the basis for the opinion is a question for the trial court to be determined in the light of all the circumstances."

■ Trial courts are vested with discretion in passing upon the competency of witnesses and admissibility of their testimony. We quote from 19 Tex.Jur. page 157, Sec. 103, as follows: "In cases wherein the factual basis for the opinion is required to be stated before the opinion may be expressed, it seems that after the factual basis has been outlined the court must determine whether the facts stated are sufficient to warrant receipt of the opinion. If the court deems them sufficient, the opinion will be received; if not, it will be rejected. The matter is wholly within the discretion of the court, and its determination will be reversed on appeal only on a showing of abuse of the discretion."

Again, in Section 98 of the same text, it is said: "Perhaps the plainest case of lack of qualification is presented where the witness himself frankly states that he has no knowledge of the matter that is being inquired into. It is clear that the opinion of such a witness is wholly inadmissible."

In the recent case of Springer et al. v. Strahan et al., 180 S.W.2d 654, 656, by the Waco Court of Civil Appeals, it is said: "While any witness, whether an expert or a layman, may properly give his or her opinion as to whether or not the grantor in a deed was capable of knowing or understanding the nature and effect of his or her acts at a given time after having first stated sufficient relevant facts to form a reasonable basis for such opinion, we do not think it is ever proper for a lay witness to be permitted over timely objections to express his or her opinion as to the mental unsoundness of another person unless and until such lay witness shall have first testified to the existence of some fact or facts tending to form some possible basis for such an opinion. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64; Smith v. Guerre, Tex.Civ.App., 175 S.W. 1093; Duckels v. Dougherty, Tex.Civ.App., 226 S.W. 720; Colvard v. Goodwin, Tex.Civ. App., 24 S.W.2d 786, err. dis.; Stell v. Salters, Tex.Civ.App., 83 S.W.2d 742; Chambers v. Winn, Tex.Civ.App., 133 S. W.2d 279; Id., 137 Tex. 444, 154 S.W.2d 454; Pryor v. Awbrey, Tex.Civ.App., 165 S.W.2d 214, error refused."

The San Antonio Court of Civil Appeals in the later case of Reiche v. Williams, 183 S.W.2d 587, page 591, said: "Although under certain conditions nonexpert opinions as to the sanity or insanity of an individual are admissible in evidence, 'a nonexpert witness may not testify as to the sanity or insanity of a person unless he accompanies his opinion with a recital of the facts upon which it is based. The reason for this is that, if the act, conduct or conversation detailed is of a trivial character, it will serve to characterize the opinion given by the witness. If, on the other hand, the circumstance is of an unusual, eccentric or extraordinary character, the witness' opin-

ion may be of great value to the jury in passing upon the issue.' 24 Tex.Jur. 430, § 45. In other words, the opinion is no stronger than the facts or circumstances which support it. The statement of the opinion simply rounds out and completes an inference drawn from a certain set of facts. If a factual basis be missing, the opinion is worthless as evidence."

This court recently handed down an opinion in a contested will case, Barton v. Bailey, 202 S.W.2d 277, 284, writ of error refused, in which we said: "Under the law it is not admissible for a witness to testify that a testator does or does not have the capacity to make a will or that he does or does not have testamentary capacity, but a witness who has had an opportunity of knowing and observing the conversation, conduct and the manners of the testator may testify as to particular facts, and also give his opinion as to the sanity of the testator based upon actual observation. Before a witness can express an opinion on this question, he must detail facts and circumstances upon which to base an opinion as to the sanity of the testator."

We think the authorities cited above correctly reflect the practice of our courts on the question involved ever since the Supreme Court laid down the rule in Brown v. Mitchell, supra. Except for the dicta in Thornton v. McReynolds, we have found no expression to the contrary. We rest our decision on said authorities, and upon "sound reason", as set out by Judge Brown. Were we to hold to the contrary, we would not only contravene said authorities, including the holdings of this court, but would contravene the settled law of this State.

■ But should we deviate from the established practice in our own courts and hold that a presumption arose that said witness, by reason of being a subscribing witness to said will, was competent to testify as to the mental condition of the testator at the time he executed the will, we would still be confronted with the fact that such presumption was completely rebutted and destroyed by the admission of the witness herself on cross examination that she knew no facts on which to base her opinion. We, therefore, sustain the action of the trial court in rejecting Interrogatory No. 8, and the answer thereto. It follows that we overrule Appellant's Point One.

■ Point No. Two complains of the refusal of the trial court to permit Mrs. Sue C. Whatley to testify as to the genuineness of Dan T. Whatley's signature to the will. Objection was made that such testimony would contravene Art. 3716, known as "The Dead Man's Statute." Under some authorities the evidence would have been admissible. But execution of the will had previously been proved, and there was no controversy as to the genuineness of the signature. Her evidence would have been merely cumulative. If the trial court erred in rejecting the evidence, we think it was not sufficient error to justify a reversal of the case. See Rule 434, Rules of Civil Procedure.

■ Appellants' Third Point complains of the submission to the jury of Special Issue No. Two, as to whether Dan T. Whatley was unduly influenced by Mrs. Sue C. Whatley to execute the will in controversy. The record shows that no objection to the submission of said issue was made by appellant before reading the charge to the jury. She, therefore, waived the point. Rule 272, R.C.P. However, she did raise the question on motion for new trial, which was too late, her contention being that there was not sufficient evidence by contestants on that issue to present a jury question. Out of deference to appellant's able counsel, we have again carefully reviewed the evidence as to undue influence. The evidence on the point is too voluminous to set out in detail here. While it was not shown that appellant was physically present at the time the will was typed and executed, it was permissible for contestants to prove, if they could, by circumstantial evidence that Dan T. Whatley was at the identical time acting under the undue influence of appellant. There was conclusive evidence of the fact that at said time, and for some years prior thereto, Dan T. Whatley was in feeble health physically and mentally; that his eyes gave him much trouble and one was removed; that he had hardening of the arteries and heart trouble; that he was in hospitals a great deal and was treated by several physicians; that at times, his

tongue would swell so that he could hardly talk; that he could not carry on a connected conversation and often fell into a stupor and at times had to be supported to walk. The evidence also showed that appellant was kind to him. Some of the witnesses said she was kind but "dictatorial." At any rate, the evidence showed she always drove the car; that she negotiated for the purchase of property in Temple and wanted the contracts and deeds made to her, but finally consented that he be joined pro forma; that when he would undertake to join in the discussion as to such deals, appellant would say, "Now, Daddy, I will attend to that." In other words, there was much evidence tending to show that Dan T. Whatley was under the complete domination of appellant during said time, and that under all the facts and circumstances, in evidence, we think a jury question was presented. As very much in point, see Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Russell v. Boyles, Tex.Civ.App., 29 S.W.2d 891; Barksdale v. Dobbins, Tex.Civ.App., 141 S.W.2d 1035, writ refused; Kutchinsky v. Zillion, Tex.Civ.App., 183 S.W.2d 237. However, Special Issue No. Two becomes immaterial, since in response to Special Issue No. One, the jury found that Dan T. Whatley did not have testamentary capacity. Said finding was sufficient to support the judgment. We overrule the point.

■ Appellant's Fourth Point is closely allied with the third point in that it complains of the alleged insufficiency of the evidence to support the jury finding as to undue influence. We have held above that the evidence was sufficient to present a question for the jury. We hold further that the evidence was sufficient to support the finding.

■ The Fifth Point alleges as error, the admission in evidence, over objection, of alleged statements made by Mrs. Sue C. Whatley to the witness, Dr. W. R. Snow, on January 24, 1946, to the effect that ever since her marriage to Dan T. Whatley, he had suffered from eye trouble and bad health, and that she had to take care of him much of the time as if he were a baby. We think no error is shown. The objection was that this statement was hearsay. In

the latter part of the preceding night, Dr. Snow received an emergency call to come to a local hotel in Abilene to see Dan T. Whatley. On arriving, he found that the patient was suffering from a stroke and was unconscious. He and appellant ordered an ambulance and transferred the patient to a hospital with which Dr. Snow was connected. The patient remained unconscious for some hours. Dr. Snow, in the usual course, took the patient's case history, writing it himself, for the purpose of diagnosis and treatment. Much of this case history was based on the personal knowledge of the patient by Dr. Snow, who had treated him in 1934 and 1935 for hardening of the arteries and from what the Doctor had observed during the recent attack. Some of the information was given by appellant, including the statement of which complaint is made. The case history was made contemporaneously with the illness, was made approximately three months before the patient died and with no thought of using same in a court proceeding. Moreover, it was an admission against interest, which would remove it from the hearsay rule. We overrule the point.

■ The Sixth Point alleges error in permitting the witness, Dr. Snow, in answer to a hypothetical question, to state that in his opinion, Dan. T. Whatley was of unsound mind on July 5, 1944, the date on which he executed said will. The basis for the objection was that said question assumed that Dr. Snow had treated Dan T. Whatley during the interval between 1935 and January 1946. We do not think the objection well taken, even if the question had been susceptible of that construction. The witness made it very clear to the jury, in answer to other questions, that he did not treat Dan T. Whatley during such interval. The jury could not have been misled even though the hypothetical question may have contained a minor defect. The witness had explained the effect of hardening of the arteries on the blood pressure and on the brain, showing that it was a continuing condition; that it culminated in the "stroke" at the hotel in January 1946, and that based upon his own observations of the patient and his knowledge of the disease, he was of the opinion that Dan T.

Whatley was of unsound mind on July 5, 1944. We ‛overrule the point.

The Seventh Point complains of the admission of a hypothetical question propounded to the witness, Dr. R. C. L. Robertson, as not based on the evidence before the court and variant therefrom in material respects. The objection as made to the trial court was too general and was overruled. However, in her brief, appellant is more specific. One minor error was corrected by appellees' attorneys before the witness answered. The hypothetical question was very long and involved a restatement of practically all of contestant's evidence. The answer sought was the opinion of the witness as to whether Dan T. Whatley was, at the time of executing said will, of sound or unsound mind. He answered that, in his opinion, said Whatley was of unsound mind. We have carefully reviewed the hypothetical question and reached the conclusion that the alleged errors in framing said question did not cause the witness to answer differently from what he would have answered had the errors not occurred. Stated differently, there was much in the hypothetical question not specifically objected to on which the witness could and doubtless did base his answer. Minor errors or omissions in the question do not render it inadmissible. Shuffield v. Taylor, 125 Tex. 601, 83 S.W.2d 955; 19 Tex.Jur. pp. 440–442, Sections 287, 288; Fort Worth & Denver City Ry. v. Greathouse, 82 Tex. 104, 17 S.W. 834, 837. We overrule the point.

Appellant's Eighth Point has to do with a question of surprise. John Whatley, an elder brother of Dan T. Whatley, was a witness for appellees and testified to a visit of Dan T. Whatley and appellant in his home, after which said parties and the witness visited their sister, Mrs. Jones, who lived near Fluvanna, for a few days, and that during said time, Dan T. Whatley was sleepy, stupid and talked disconnectedly. When asked to state the year in which this occurred, the witness answered, "1945", but on further questioning, changed the date to "1944". The date was of some materiality for the reason that the will in controversy was executed in July, 1944.

Appellant's attorneys expressed no surprise, nor did they ask for any postponement at the time. Appellant was present in court at said time. But in the motion for new trial, an affidavit by said Mrs. Jones was attached contradicting John Whatley's testimony that the visit was in 1944. To offset said affidavit, appellees attached another affidavit to their reply, in which said Mrs. Jones stated that in making the first affidavit, she was confused as to the date, and was still uncertain as to same. However, appellant in her testimony corroborated the witness John Whatley as to said visit having been made in 1944. We preceive no error by the trial court in overruling the motion for new trial on account of alleged surprise, and overrule the point.

Point No. Nine complains of the exclusion by the trial court of certain answers to questions propounded to witnesses by appellant. The answers excluded were the opinions and conclusions of the witnesses and were properly excluded.

Point No. Ten complains of the admission over appellant's objection of the following: "Now, daddy, I'll take care of this." The witness, Mrs. Sid Wade, was testifying by deposition as to certain negotiations by the Whatleys for the purchase of some real estate. Her evidence disclosed that Mrs. Sue C. Whatley did practically all the negotiating. The eleventh direct interrogatory was as follows: "Was any request made by either Sue C. Whatley or Dan T. Whatley as to whose name would be put in the contract as the purchaser? And if you have said Sue C. Whatley requested that her name only be placed in such contract of purchase, then state fully just what was said and done." Answer: "Yes, Mrs. Whatley requested that the deed and the sale contract be drawn in the name of Sue C. Whatley. This request was made on the date of the actual drawing of the contract and the deposit of the escrow money, at which time Mr. Whatley was in the office." "On this occasion, Mr. Whatley started to make a remark and Mrs. Whatley said: 'Now, Daddy, I'll take care of this.'" The answer was clearly admissible on the matter of undue influence, which was one of the two issues in the case.

The judgment of the trial court is affirmed.

### On Rehearing.

Our original opinion contains an error, which we desire to correct. We state: "But this will having been admitted to probate by the County Court, the burden was then on contestants to prove mental unsoundness of the testator."

Said statement was made on authority of Cook v. Denike, Tex.Civ.App., 216 S.W. 437, and Chambers v. Winn, Tex.Civ.App., 133 S.W.2d 279, which was a correct statement of the law where no contest is made upon application to probate a will, and an original suit is afterward filed to set aside the order admitting the will to probate. But where the application for probate is contested in the county court, as in this case, the burden of proof does not shift on appeal but remains on the proponents to prove mental competency of the testator. 44 Tex.Jur. pp. 571, 572, Sec. 31, and authorities therein cited.

With this correction in said opinion, the motion for rehearing is overruled.